## UNITED STATES v. HANSETT.
### Civ. No. 129.

District Court, E. D. New York.
Nov. 20, 1939.

Harold M. Kennedy, of Brooklyn, N. Y. (William S. Perlman and Herbert I. Sorin, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for plaintiff.

Robert K. Story, Jr., of New York City, for defendant.

BYERS, District Judge.

The plaintiff sues as the owner and holder of a promissory note made, executed and delivered by the defendant on January 22, 1935, whereby for value received she promised to pay to the order of Pioneer Burner Co. $1,132.53 in thirty-six equal consecutive monthly instalments, "beginning one month after date hereof, at the office of Heating and Plumbing Finance Corporation, 37 West 39th Street, New York, N. Y., with interest from maturity and 15% of the unpaid amount of this note as attorneys fee if placed in the hands of an attorney for collection. Upon non-payment of any instalment when due, all remaining instalments shall immediately become due and payable."

The complaint alleges that, before maturity, the note was duly indorsed and delivered to the Heating and Plumbing Finance Company; and that the defendant defaulted when a balance of $992.97 was still due and owing, and that the Finance Company, after due demand "from the defendant, and pursuant to the National Housing Act, Title I [12 U.S.C.A. § 1701 et seq.] was reimbursed by the plaintiff"; that the Finance Company duly indorsed and delivered said note to plaintiff, now the owner and holder, and that, although demand has been made upon the defendant, she still owes $992.97 with interest.

The answer contains denials of the material allegations in the complaint and, for a separate and distinct defense, pleads that on the date of the note the defendant entered into a contract with the American

Home Heating Co., Inc., for the purchase and installation of an oil burner, boiler and appurtenances, which were to be adequate to maintain a stipulated heat during the winter and to provide hot water in the summer, etc., and that the American Home Heating Co., Inc., has not completed or performed the work according to the terms of the agreement, as to which details are pleaded. That the Pioneer Burner Co. is a stranger to the transaction and furnished no consideration for the note made to it in the sum of $1,132.53.

Also there is pleaded a prior action between the plaintiff's predecessor, the Heating and Plumbing Finance Corporation, and the defendant, in the City Court, in which a motion for summary judgment was denied, and that later the action was discontinued; that the Finance Company was at no time a holder in due course and was charged with notice of all the defects in the work for which the promissory note was given, of which it had actual and constructive notice; that, in consequence of the foregoing, the plaintiff in this action is not a holder in due course and is subject to all the defenses available to this defendant against the American Home Heating Co., Inc., and the payee named in the note, the Pioneer Burner Co., and that, by reason of the facts heretofore alluded to, there was a failure of consideration for the promissory note in suit, "and that the same is subject in any event to a set-off equal to or in excess of the total amount of the promissory note".

This cause having been tried upon the facts, without a jury, the court makes and states the following findings of fact:

(a) On or about January 14, 1935, the defendant signed a blank furnished to her by a salesman of heating equipment, who represented both the Pioneer Burner Co. and the American Home Heating Co., Inc., of 538 Vanderbilt Avenue, Brooklyn, New York, which reads in part as follows: "The following information is given for the purpose of obtaining credit under the provisions of the National Housing Act. The approximate amount of credit required by me for 36 months is $1132.53."

Then followed details not presently important, which indicate that an installation in given property, which is identified by street number and other particulars, is comprehended in the application.

(b) That blank was delivered to the Heating and Plumbing Finance Corpora-tion, together with the promissory note referred to in the next finding, and on the reverse side thereof, the blank being filled in in long-hand by the salesman, there is recited that the—

"Cash Selling Price" is      $ 985.00
(which is the balance to be financed)
"H&PFC Fee (36) (Add)      $ 147.53

x x x   Amount of Note      $1132.53

"Product or material to be installed and Maker's name:
"3.S.6. Ideal Red Flash for oil Burning
"Complete oil Burning installation.
"From whom
"Purchased 18 Ave. Plumbing Supply Co.
"Contractor's
"Signature      Pioneer Burner Co.
"Address
     538 Vanderbilt Ave., B'klyn, N. Y."

(c) Accompanying the said blank, called application for credit, was the note upon which suit is here brought; namely, one dated January 22, 1935, in the sum of $1,132.53, payable to order of Pioneer Burner Co., at the office of Heating and Plumbing Finance Corporation, in thirty-six equal consecutive monthly instalments, etc., signed and delivered by this defendant.

(d) The said note and the credit statement were received by the Heating and Plumbing Finance Corporation on or about January 23, 1935, at which time a check for $985 was issued by that corporation to the Pioneer Burner Co., and the said check was paid in due course.

(e) The business of the Heating and Plumbing Finance Corporation was that of "financing instalment heating contracts and plumbing equipment by any firm, manufactured by the American Radiator & Standard Sanitary Corporation and its subsidiaries."

(f) The Heating and Plumbing Finance corporation had actual knowledge that the defendant's note in suit was given for the payment of an oil burner, etc., to be installed in the premises of this defendant, and that the cash sale price was $985, which amount was to be financed.

(g) The oil burner and all other articles so contracted for were installed in the premises described in the credit application as contemplated by the contract solicited on January 14, 1935, except that the said burner and equipment did not function in accordance with the salesman's representa-

tions, and the defendant asserted that there were defects in both material and workmanship, whereby a controversy arose between the defendant and her contractor.

(h) The defendant defaulted in making payments on the note in suit, and the amount remaining unpaid is $992.97 with interest from February 24, 1936.

(i) By reason of the default stated in the last finding, said Heating and Plumbing Finance Corporation brought action against the defendant to recover the amount due upon the said note, in the City Court of the City of New York, in the County of Kings, at an undisclosed date, which was prior to January 25, 1936; the index number of said suit is 11826—1935.

(j) The defendant thereupon brought action in the same court against Franklin Oil Heating Co., Inc., Jack Finn, doing business under the firm name and style of Pioneer Burner Co., and American Home Heating Co., Inc., to recover damages said to have been suffered by her by reason of alleged defects in the performance of the said contract as heretofore recited.

(k) Those actions were consolidated for trial; thereafter and on January 25, 1936, the consolidated cause was discontinued, without costs, upon a stipulation which is in evidence in this case, by the terms of which the American Home Heating Co., Inc., undertook to do certain work in connection with the installation of the said equipment, which was intended to put the latter in proper condition to accomplish the purposes of the original contract, and to overcome the deficiencies in operation which developed after the said oil burner and equipment had been installed.

(l) The American Home Heating Co., Inc., performed its undertaking as recited in the stipulation upon which the discontinuance was based, notwithstanding which, the defendant failed to pay her note, as recited in Finding No. 8.

(m) On or about February 24, 1936, the Federal Housing Administration, an instrumentality of the United States of America, duly and according to law paid to Heating and Plumbing Finance Corporation the sum of $1,057.47 as an insured loss arising upon the defendant's said note, and the financing of the loan in connection with which it was given, and acquired by indorsement and delivery the said note and all rights thereunder, and is now the owner and holder thereof.

(n) By reason of the defendant's default in making payments in monthly instalments, the said note was past due at the time of its acquisition by the plaintiff.

The plaintiff is entitled to recover judgment against the defendant as demanded in the complaint, in the sum of $992.97, with interest from February 24, 1936, together with the costs and disbursements of this action.

Judgment will be awarded to the plaintiff because the evidence demonstrates that there was litigation between the Finance Corporation and the defendant, based upon her non-payment of the note, and that, in effect, she vouched in her contractor; thereafter the latter undertook to remedy the alleged defects, and thus the litigation was settled. The proof here is that the corrective work agreed upon was done, but there is a conflict of testimony as to whether it was effective to remedy the complained-of conditions. The defendant's proof is deemed to have fallen short of establishing a failure to perform upon the part of her contractor, and in reaching that conclusion it has been assumed that the missing witness, Williams, would have generally corroborated the defendant's testimony on that subject.

It would have been possible of course to direct judgment for the plaintiff in line with the decisions in United States v. McCulloch, D.C., 26 F.Supp. 7, and United States v. Hoover, D.C., 28 F.Supp. 556, but I have been unwilling to do that in view of the evidence in the case. The reason is that a terse ruling to the effect that the plaintiff's assignor was a holder in due course, so as to preclude the court from inquiring into anything beyond the question of title to the note, seemed to involve an unnecessarily technical ruling, and one which might conceivably ignore the essential equities of the situation.

It is apparent that sections 91 and 96 of the Negotiable Instruments Law of the State of New York (Consol.Laws, c. 38) must be consulted to ascertain the legal status of the plaintiff's assignor; namely, the constituency of a holder in due course, and the rights of such a holder.

As to the former, knowledge of the nature of the contract underlying the note, on the part of a discounting bank, may deprive the latter of its apparent status as a holder in due course; see Pellegrino v. First National Bank of Newark, N. Y., 210 App.Div. 584, 206 N.Y.S. 716.

Such knowledge was held to be absent in one of the cases upon which plaintiff relies: First National Bank & Trust Co. of Elmira v. Conzo, 169 Misc. 268, 7 N.Y.S.2d 334, 335, thus: "Nothing indicates that the plaintiff * * * knew or had any notice * * * that it [the note] was collateral to a contract with Moffat [the contractor] and payable only upon performance of that contract."

Credit Alliance Corporation v. Buffalo Linen Supply Co., 238 App.Div. 18, 263 N.Y.S. 39, is thought not to point inevitably to the decision here to be made. That case holds that, since there was no breach of an implied warranty of fitness of the article to pay the purchase price of which the notes were given, at the time the notes were purchased, the plaintiff is not chargeable with any infirmity, i. e., a subsequent breach of that warranty was no defense. That case involved a washing machine and the notes were given to secure its purchase price. It is necessary to assume that, when the court said the breach of warranty had not occurred when the notes were purchased, it did not mean that the machine was not already in existence, but only that it had not been tested.

Here the contract was for labor and equipment, to be performed, delivered and installed so as to accomplish a known purpose, in the future, which the discounting agency knew precisely when it advanced its money; human experience teaches that such contracts are fruitful sources of controversy touching the nature and extent of performance, and the transaction must have been entered into with that prospect in view. If so much be conceded, it must follow that the Finance Corporation's status as a holder in due course may well be deemed to be putative merely, and subject to precise definition in the light of all attendant circumstances.

The other cases cited by plaintiff are not helpful: Hulburt v. Walker, 258 N.Y. 8, 179 N.E. 34, and Riverside Bank v. Woodhaven Junction Land Co., 34 App.Div. 359, 54 N.Y.S. 266, are not even remotely in point, and Gillette v. Hodge, 8 Cir., 170 F. 313, is based in part upon lack of notice to the plaintiff of the agreement between the original parties as to which a breach was asserted.

The federal legislation giving rise to this and many similar transactions had for its object the encouragement of instalment purchases of equipment on the part of those who might not otherwise be able to gratify their desires.

Experience in other parts of the court has taught that frequently contracts were entered into by credulous purchasers with persons and enterprises utterly lacking in moral or financial stability; and that the latter promptly discounted their notes and then conveniently disappeared, or otherwise defaulted, leaving the purchasers, as makers of such notes, to deal only with the discounting agency or the government as insurer of the latter.

 Doubtless those observations have contributed to the conviction presently held, and which will persist until authoritative ruling is announced to the contrary, that it will not serve the ends of justice to dispose of such cases as this merely in response to the assertion that a financing agency is a holder in due course of such a note, and that the government, as its insurer, steps into its place.

Fairness to the prosecuting attorney in this case requires the court to state that he prepared and presented his case so as to make a complete showing upon the merits.

Judgment ordered for the plaintiff as demanded in the complaint.