## In re WHITDEL PROPERTIES, LTD., Debtor.

### Bankruptcy No. 79–1569.

United States Bankruptcy Court, W.D. New York.

Jan. 11, 1984.

Burns, Suter & Doyle by James B. Doyle, Rochester, N.Y., for debtor.

Phillips, Lytle, Hitchcock, Blaine & Huber by Edward P. Yankelunas, Rochester, N.Y., for First Federal Sav. & Loan Ass'n.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The Chapter XI debtor-in-possession in this Act case has filed an objection to the claim of First Federal Savings and Loan Association of Rochester, hereinafter referred to as "First Federal". The debtor, Whitdel Properties, Ltd., hereinafter referred to as "Whitdel" and First Federal have stipulated the facts.

█ The facts follow. There are four separate corporations owned by the same

man who is president and Chief Executive officer of each. Whitdel is one of the four corporations. Another corporation owned by this individual was Specialized Warehouse Enterprise Corp., hereinafter referred to as "Specialized". On or about May 8, 1979, Specialized opened a money phone account at First Federal. Between May 15–17, 1979, six checks were deposited in the Specialized account, totaling $483,-678.74. All the checks were written on various accounts maintained at Finger Lakes National Bank in Odessa, New York. Five of the six checks failed to clear when deposited. First Federal made presentation and they were dishonored by Finger Lakes National Bank and notice of the dishonor was given to the individual who owned the four corporations. One check was honored. The net effect was that two Whitdel checks totaling $156,845.91 failed to clear and checks totaling $249,894.02 written on the Finger Lakes National Bank account of two of the other four corporations failed to clear. There was a balance of $22,759.71 left in the Specialized account. $5,458.26 was recovered from the balance in the Finger Lakes National Bank account and $40,-875.00 was paid to First Federal by virtue of restitution made by the owner of the corporation as a term of his Monroe County Court probation, making a total payment to First Federal of $69,092.97.

Specialized filed a petition in bankruptcy on June 5, 1979. Whitdel filed a similar bankruptcy petition in Chapter 11 on June 6, 1979. The other two corporations owned by the individual are now defunct and insolvent. First Federal has filed a claim in each of the bankruptcy proceedings in the amount of $383,980.82. First Federal was not listed as a creditor in the schedules of Whitdel but was listed in the schedules of Specialized.

In answering the objection of Whitdel, First Federal contends that not only is Whitdel liable for the two checks drawn by it totaling $156,845.91 but also that Whitdel is jointly and severally liable as a co-conspirator to defraud First Federal of the balance of the dishonored checks less the amount recovered.

There is no question of the liability of Whitdel on the two checks drawn by it. U.C.C. 3–413(2) provides that:

The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any endorser who takes it up. The drawer may disclaim this liability by drawing without recourse.

The draft was dishonored and notice of dishonor was given to Whitdel through its chief operating officer. First Federal by advancing credit for the checks to Specialized, after the deposit, was a holder in due course. U.C.C. 4–209. See *Long Island National Bank v. Zawada,* 34 A.D.2d 1016, 312 N.Y.S.2d 947 (2d Dept. 1970). First Federal became a holder upon the indorsement of the checks to it. N.Y.U.C.C. 1–201(20). The indorsements are shown on the reverse side of the checks. (Exhibit A, stipulation of facts). Even if the bank were a mere holder and not a holder in due course, it would be entitled to recover on the dishonor of the drafts since no defenses have been raised. In its brief, the debtor-in-possession concedes that $156,845.91 less appropriate credit for payments received are owed by Whitdel to First Federal because Whitdel was a drawer of the dishonored checks.

■ The remaining issue is whether Whitdel is jointly and severally liable for a co-conspiracy to defraud First Federal on the other dishonored checks. The stipulation entered into by the parties reveal no facts upon which such a conclusion could be reached.

Therefore, First Federal has a claim against Whitdel in the amount of $130,-202.51 which represents the $156,845.91 amount of the two bad checks by Whitdel less their proportionate share of the $69,-092.97 which First Federal has already recovered and it is so ordered.